# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

EVEREST INDEMNITY INSURANCE
COMPANY,

    Plaintiff,

v.

JAKE'S FIREWORKS, INC., *et al.*,

    Defendants,

Case No. 19-2620-JAR-ADM

## MEMORANDUM AND ORDER

Plaintiff Everest Indemnity Insurance Company ("Everest") filed this declaratory judgment action against Defendants Jake's Fireworks, Inc. ("Jake's) and Howard O. Harper. Everest seeks a declaration of its rights and obligations under an insurance policy it issued to Jake's relating to an accident involving Mr. Harper and a subsequent state-court lawsuit that Mr. Harper brought against Jake's. Maxum Indemnity Company ("Maxum") now seeks to intervene as a party plaintiff to seek a declaration of its rights and obligations under a commercial excess liability policy that it issued to Jake's relating to the same accident and lawsuit involving Mr. Harper. (ECF No. 35.) Maxum contends that the outcome of this case could substantially impair or impede its interests. Jake's opposes the motion largely on the grounds that Jake's "does not necessarily agree" that Everest does not adequately represent Maxum's interests. Everest and Mr. Harper have not responded to the motion, and the time to do so has passed.

The court finds that Maxum meets the standard for intervention of right and also easily meets the standard for permissive intervention. Specifically, Maxum's motion to intervene is timely given the circumstances of this case; a decision regarding the Everest policy would impact

Maxum, both because it could trigger excess coverage and because the Everest and Maxum policies follow the same form, which could place Maxum at a practical disadvantage if it had to litigate the same issues in a separate action; and, finally, Everest does not adequately represent the interests of Maxum, which is a separate corporate entity that issued a separate policy. As to permissive intervention, Maxum's proposed intervenor complaint shares common questions of law and fact with Everest's complaint because both entities seek declaratory judgments that the same policy exclusions bar coverage for the same accident and subsequent defense of Jake's.

## I. BACKGROUND

Mr. Harper was working in some capacity at a Jake's Fireworks location when he suffered severe burns from a fire that occurred when he was unloading fireworks using a forklift. (ECF No. 1, at ¶ 18.) The parties generally disagree whether, at the time of the accident, Mr. Harper was Jake's employee or an employee of Lone Star, LLC ("Lone Star"). According to Everest's complaint, Mr. Harper filed a worker's compensation claim against Lone Star, which Lone Star's insurer ultimately settled, and he filed suit against Jake's in the District Court of Crawford County, Kansas. (*Id.* at ¶¶ 19-20.) Jake's tendered its defense and indemnity to Everest, and Everest is providing Jake's defense under a reservation of rights. (*Id.* at ¶ 22.) On October 9, 2019, Everest filed this action, seeking a declaration of its rights and obligations under the policy. Everest claims the employer's liability exclusion bars coverage for Mr. Harper's injuries regardless of whether he was any of the following: (1) a Lone Star employee, because Lone Star is a named insured under the policy; (2) a Lone Star employee, because Lone Star was a contractor hired and retained by Jake's, which is a named insured under the policy; or (3) a "leased worker" who qualified as an employee of Jake's, which is a named insured under the policy. (*See generally id.*)

Both Jake's and Mr. Harper have moved to stay this case pending resolution of the state-court suit—essentially on the basis that the state-court suit must first resolve the question of whether Mr. Harper was an employee of Jake's at the time he sustained injuries. (ECF Nos. 16, 19.) Everest has moved for summary judgment on the basis that various policy exclusions bar coverage regardless of the capacity in which Mr. Harper was working. (ECF No. 22.) Those motions are currently pending before the chief district judge. On March 3, 2020, the undersigned convened a scheduling conference and imposed case management deadlines. (ECF No. 34, 35.)

Three days later, on March 6, Maxum Indemnity Company filed this motion to intervene as a party plaintiff. The Maxum policy is excess to and follows the forms, provisions and exclusions in the Everest policy unless otherwise stated in the Maxum policy. (ECF No. 36, at 3.) Maxum seeks to intervene to seek an interpretation of its policy with respect to the same claims by Mr. Harper against Jake's. Maxum claims that the exclusions Everest asserts also bar coverage under the Maxum policy. (*See generally* Maxum's Proposed Comp. for Decl. J., ECF No. 35-1 (asserting the same policy exclusions).) Therefore, Maxum seeks to intervene to seek a declaration of its rights and obligations under its policy.

## II. ANALYSIS

FED. R. CIV. P. 24 recognizes two types of intervention. Subsection (a) applies to intervention of right, and subsection (b) applies to permissive intervention. Maxum moves for intervention of right, or alternatively, for permissive intervention. For the reasons explained below, the court finds that Maxum is entitled to intervene as a matter of right and would also easily meet the standard for permissive intervention.

### A. Intervention of Right

Under Rule 24(a)(2), to intervene as of right, the moving party must establish the following:

> (1) the application is timely; (2) it claims an interest relating to the property or transaction which is the subject of the action; (3) the interest may as a practical matter be impaired or impeded; and (4) the interest may not be adequately represented by existing parties.

*Kane Cty. v. United States*, 928 F.3d 877, 890 (10th Cir. 2019); *see also* FED. R. CIV. P. 24(a)(2) (setting forth the same standard). The Tenth Circuit "has historically taken a liberal approach to intervention [of right] and thus favors the granting of motions to intervene." *W. Energy All. v. Zinke*, 877 F.3d 1157, 1164 (10th Cir. 2017). "The central concern in deciding whether intervention [of right] is proper is the practical effect of the litigation on the applicant for intervention." *San Juan Cty. v. United States*, 503 F.3d 1163, 1193 (10th Cir. 2007) (*en banc*). The court addresses each of these requirements below.

#### 1. Maxum's motion is timely.

Delay alone does not make a request for intervention untimely; rather the court measures delay from the time when the movant was put on notice that its interests would not be protected by a party in the case. *Oklahoma ex rel. Edmondson v. Tyson Foods, Inc.*, 619 F.3d 1223, 1232 (10th Cir. 2010). The court evaluates timeliness "in light of all the circumstances, including the length of time since the applicant knew of his interest in the case, prejudice to the existing parties, prejudice to the applicant, and the existence of any unusual circumstances." *Kane Cty.*, 928 F.3d at 890-91. "Prejudice" in this context means prejudice caused by the would-be intervenor's delay, not the practical prejudice that inevitably comes from defending against additional claims. *See id.* at 91.

Everest filed this declaratory judgment action on October 9, 2019, and Maxum moved to intervene slightly less than five months later, on March 6, 2020. During that five-month period, Mr. Harper filed his answer on November 20, 2019, and Jake's filed its answer on January 13, 2020. Maxum argues its motion is timely because it is made "within only a few months of the original petition, within weeks of defendants filing their answers, and before any discovery has been conducted in this case." (ECF No. 36, at 3.) But Jake's notes that some discovery has been completed. Among other things, the parties have exchanged initial disclosures, and discovery is now open. According to Jake's, "this factor does not clearly weigh in favor of Maxum, and if anything, is neutral." (ECF No. 40, at 4.)

This assessment is incorrect on two grounds. First, timeliness is not a *factor* for the court to consider; it is an essential element of intervention of right. Here, Maxum's motion is timely. It is unclear when Maxum knew that its interest would not be protected in this suit, but, generally, the court assumes that Maxum knew about this lawsuit around the time Everest filed it in October 2019 because it was a matter of public record. Even so, the delay between Everest's filing of this case and Maxum's motion to intervene is not unreasonably lengthy. Discovery has just begun, and the court allowed for a longer discovery period given the pending motions—among them, defendants' motions to stay this case entirely. Given the context, Maxum's motion appears quite timely. Moreover, Jake's (or any other party) has not alleged any prejudice resulting from Maxum's delay itself, which is another "circumstance" the court considers when evaluating timeliness. For these reasons, the court finds this element is established.

### 2. Maxum claims an interest that could be impaired by the litigation.

The court addresses the second and third elements together since they are closely related. To satisfy these elements, the party seeking to intervene bears a "minimal" burden to show that it

has an interest that could be adversely affected by the litigation. *Kane Cty*, 928 F.3d at 891; *see also WildEarth Guardians v. U.S. Forrest Serv.*, 573 F.3d 992, 995 (10th Cir. 2009) (describing the burden as minimal). "Whether an applicant has an interest sufficient to warrant intervention as a matter of right is a highly fact-specific determination, and the interest test is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." *Barnes v. Sec. Life of Denver Ins. Co.*, 945 F.3d 1112, 1121 (10th Cir. 2019) (quoting *Kane*, 928 F.3d at 889). The interest must be direct, substantially, and legally protectable—"one that would be impeded by the disposition of the action." *Id.* at 1112-22.

Maxum explains that Mr. Harper's state-court suit involves potential damages exceeding the Everest policy limit. This would implicate the Maxum excess policy if this court were to find that the Everest policy provides coverage and if Mr. Harper is ultimately successful in obtaining relief exceeding the Everest policy limit. (ECF No. 38, at 6.) In other words, Maxum's interests would be impaired or impeded absent intervention because the court's ruling could trigger Maxum's duties and obligations under its policy without allowing Maxum to participate in the proceedings informing those rulings. (*Id.* at 7.) And because the Maxum policy follows the same form as the Everest policy, Maxum argues the court's interpretation of the Everest policy would undoubtedly inform interpretation of the Maxum policy. Although the outcome of this case would not bind Maxum, Maxum could be disadvantaged as a practical matter if it were forced to relitigate the same issues in a subsequent case. (*Id.*) Jake's does not dispute that Maxum meets this element. Jake's admits that "it's hard to argue that a decision by the Court on the Everest policy would not, at least at some level, have an impact on the interests of Maxum." (ECF No. 40, at 4.) Jake's

6

separately agrees that Maxum could be at a practical disadvantage if it later files a lawsuit concerning the same issues and interpretation of the same policy language. (*Id.*)

The court agrees that Maxum has demonstrated an interest that could be impaired if the case proceeds without Maxum. As Maxum notes, courts have generally allowed excess insurers to intervene in lawsuits to protect their interests in actions involving primary insurers. For example, in *Liberty Mutual Fire Insurance Co. v. Lumber Liquidators, Inc.*, the court found that an excess insurer had an interest in the suit because the primary insurers' policies covered the same claims that were the subject of the action, and therefore resolution of the action could impact the excess insurers by triggering coverage obligations. 314 F.R.D. 180, 185 (E.D. Va. 2016). The court separately found that the excess insurers' interest could be further impaired if they were forced to relitigate issues decided in the action regarding primary-insurance coverage. *Id.; see also Felman Prod., Inc. v. Indus. Risk Insurers*, No. CIV.A. 3:09-0481, 2009 WL 5064058, at *3 (S.D.W. Va. Dec. 16, 2009) (finding a "significantly protectible interest" and allowing an excess insurer to intervene where its excess coverage policy was potentially triggered because the amount of damages pleaded exceeded primary-insurance coverage); *Maryland Cas. Co. v. W.R. Grace & Co.*, No. 88 CIV. 4337 (JSM), 1996 WL 34154, at *2 (S.D.N.Y. Jan. 30, 1996) (permitting intervention as of right "[a]s excess insurers at levels that may be reached in this case, the [excess insurers] clearly have such an interest" relating to the subject of the action). Given the Tenth Circuit's liberal approach toward intervention, Maxum easily demonstrates that its interests would be impaired for largely the same reasons articulated in *Liberty Mutual. See also Coal. of Arizona/New Mexico Ctys. for Stable Econ. Growth v. Dep't of Interior*, 100 F.3d 837, 839 (10th Cir. 1996) (as an example of liberal intervention, finding that a commercial wildlife photographer who had "photographed and studied the [Mexican Spotted] Owl in the wild" and had been instrumental in the decision to list the owl under the Endangered Species Act possessed a legal interest in defending against a lawsuit to rescind that protection).

7

### 3. Everest does not adequately represent Maxum's interests.

The burden to establish inadequate representation by existing parties is "minimal." *Barnes*, 945 F.3d at 1124. If the parties' interests are identical, the court may presume adequate representation. *Kane*, 982 F.3d at 892. But the possibility of divergent interests is enough to satisfy this element and, to that end, the moving party need only show the potential for inadequate representation. *Western Energy*, 877 F.3d at 1168.

Maxum argues that Everest does not adequately represent Maxum's interest because Everest is a wholly separate and unaffiliated company that seeks declaratory relief involving its own policy. Because of this, Everest would be indifferent to the effect that any of its arguments or allegations may have on interpretation of the Maxum policy. Jake's "does not necessarily agree" because, according to Jake's, Maxum asserts that its policy exclusions are virtually identical to the Everest policy exclusions and therefore Everest would have every reason to make arguments that would support that these exclusions apply. (ECF No. 40, at 5.) Jake's further notes that Maxum's and Everest's interests are aligned insofar as both parties would benefit from a declaration of no-coverage for the Everest policy since Maxum's coverage flows from and is triggered by exhaustion of Everest's coverage. (*Id.*)

Maxum has met its minimal burden to establish the potential for divergent interests between Maxum and Everest. While Jake's is correct that Maxum and Everest would have a shared interest in determining that policy exclusions preclude coverage under the primary Everest policy because exhaustion of that policy triggers an excess policy, Everest would not necessarily have any interest in precluding excess coverage beyond making arguments that may apply equally to identical policy language. As the court in *Liberty Mutual* noted, an excess insurer's interests are not generally adequately protected regarding policy interpretation on a separate and distinct

8

policy issued by an insurer unaffiliated with the primary insurer. 314 F.R.D. at 186. The Tenth Circuit has also recognized the potential of divergent legal strategies when an existing party represents a separate and distinct client. *See Barnes*, 945 F.3d at 1124-25 (noting that defendant's counsel could be expected to act in the best interest of both its client and the party seeking intervention and noting that defense counsel "will, and should, act only in the best interests of its client"). For these reasons, Maxum has established that Everest may not adequately represent Maxum's interests.

### B. Permissive Intervention

Because Maxum has satisfied the requirements for intervention of right under Rule 26(a)(2), the court grants the motion to intervene. The court also finds that Maxum easily meets the requirements for permissive intervention under Rule 24(b)(1)(B), which permits intervention by a movant that "has a claim or defense that shares with the main action a common question of law or fact." *See also Arney v. Finney,* 967 F.2d 418, 421 (10th Cir. 1992) ("Permissive intervention is a matter within the sound discretion of the district court." (quotations omitted)). Maxum's proposed intervenor complaint seeks a no-coverage declaration based on the same types of policy exclusions (and the same language) at issue in the Everest policy. The coverage issues also stem from the same accident and underlying lawsuit, and defendants' defenses to both declaratory judgment complaints will likely be identical. And the court finds no undue delay or prejudice for largely the same reasons discussed above when considering the timeliness of Maxum's motion. *See* FED. R. CIV. P. 24(b)(3) (permissive intervention requires the court to determine whether "intervention will unduly delay or prejudice the adjudication of the original parties' rights").

9

## III. CONCLUSION

For the reasons stated above, Maxum has established it is entitled to intervene as a matter or right and would also easily meet the test for permissive intervention as well. The court grants Maxum's motion. Maxum must promptly file its intervenor complaint as a separate docket entry in this case.

In Jake's response brief, Jake's asks that the court direct that orders already entered in this case regarding Everest apply equally to Maxum without the need for additional briefing. Specifically, Jake's asks that the pending motions to stay essentially be construed as applying equally to the Maxum complaint and that the court's previous order staying briefing on Everest's summary judgment motion apply to any potential dispositive motion that Maxum may file. Jake's further requests that the court condition Maxum's intervention on requiring Maxum to identify what discovery it needs to conduct so that the parties can determine whether they require extensions to the current scheduling-order deadlines and/or require that Everest and Maxum issue joint discovery.

The court denies these requests for several reasons. Generally, requests for affirmative relief must be made by a motion, not raised in a response brief. Making these requests in this fashion deprives Everest and Mr. Harper of an opportunity to be heard on the issue. Moreover, the requests involve motions—some ripe—pending before the chief district judge, not the undersigned, and to that end, the requests are not workable. Finally, Maxum has met the legal standard for intervention, and conditioning its intervention on side issues pertaining to discovery would be in error. That said, the court expects all parties to comply with the operative scheduling order. If the parties believe that Maxum's intervention or other issues may warrant extensions to

the current schedule, the parties are directed to contact the magistrate judge's chambers promptly to request a discovery conference to discuss narrow, targeted extensions.

**IT IS THEREFORE ORDERED** that Maximum Indemnity Company's Motion to Intervene (ECF No. 35) is granted. Maxum shall file its intervenor complaint (ECF No. 35-1) as a separate docket entry in this case within two business days from the date of this order.

**IT IS SO ORDERED.**

Dated March 30, 2020, at Topeka, Kansas.

<u>s/ Angel D. Mitchell</u>
Angel D. Mitchell
U.S. Magistrate Judge